## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMY RAUL, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| CONDOR HOSPITALITY TRUST, INC., J. WILLIAM BLACKHAM, DANIEL R. ELSZTAIN, DONALD J. LANDRY, DAPHNE J. DUFRESNE, THOMAS CALAHAN, BRENDAN MACDONALD, BENJAMIN WALL, NOAH DAVIS, and MATIAS I. GAIVIRONSKY, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Tammy Raul ("Plaintiff") by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Condor Hospitality Trust, Inc. ("Condor" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Condor and the Defendants.

## SUMMARY OF THE ACTION

1.     Plaintiff brings this class action on behalf of the public shareholders of Condor against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to NexPoint Hospitality Trust ("NexPoint," or "Parent") (the "Proposed Transaction").

2.     On July 22, 2019, Condor entered into an Agreement and Plan of Merger (the "Merger Agreement") with NexPoint.  NexPoint is the operating partnership of NexPoint Hospitality Trust, an unincorporated, open-ended real estate investment trust established pursuant to a declaration of trust under the laws of the Province of Ontario ("NHT") and listed on the TSX Venture Exchange ("TSXV") under the ticker symbol "NHT".  NexPoint, through NHT, owns 55.6% of the Company's common stock and 100% of its Series E Preferred Stock.

3.     Pursuant to the terms of the Merger Agreement, NexPoint will acquire all outstanding common shares of Condor for $11.10 per share in an all-cash transaction valued at approximately $318 million.  The consummation of the Proposed Transaction is subject to certain closing conditions, including the approval of the stockholders of Condor.

4.     On August 9, 2019, in order to convince Condor's stockholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading preliminary proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Condor and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule

14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Condor stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Additionally, the Company's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

## THE PARTIES

9.     Plaintiff is, and has been at all times relevant hereto, the owner of Condor common stock.

10.    Defendant Condor is a Maryland corporation with its principal executive offices located at 4800 Montgomery Lane Suite 220. Bethesda, MD 20814.  The Company's common stock is traded on the NYSE under the symbol "CDOR."

11.    Defendant J. William Blackham ("Blackham") is and has been the Company's Chief Executive Officer and Chairman of the Board at all times during the relevant time period.

12.    Defendant Daniel R. Elsztain ("Elsztain") is and has been a director of the Company at all times during the relevant time period.

13.    Defendant Donald J. Landry ("Landry") is and has been a director of the Company at all times during the relevant time period.

14.    Defendant Daphne J. Dufresne ("Dufresne") is and has been a director of the Company at all times during the relevant time period.

15.    Defendant Thomas Calahan ("Calahan") is and has been a director of the Company at all times during the relevant time period.

16.    Defendant Brendan MacDonald ("MacDonald") is and has been a director of the Company at all times during the relevant time period.  Defendant MacDonald is a member of StepStone Group Real Estate Holdings LLC, general partner of StepStone Group Real Estate LP, and the sole member and investment manager of StepStone REP III (GP), LLC, the general partner of REP III Flight-Investco, L.P. ("SREP").  SREP and its affiliates have shared voting and shared dispositive power over 3,213,565 shares of the Company's common stock. Defendant MacDonald may be deemed a participant in the control of the voting, disposition or purchase of the shares held by SREP and thus may be deemed to share beneficial ownership of these shares.

17.    Defendant Benjamin Wall ("Wall") is and has been a director of the Company at all times during the relevant time period.

18.     Defendant Noah Davis ("Davis") is and has been a director of the Company at all times during the relevant time period.

19.     Defendant Matias I. Gaivironsky ("Gaivironsky") is and has been a director of the Company at all times during the relevant time period.

20.     Defendants Blackham, Elsztain, Landry, Dufresne, Calahan, MacDonald, Wall, Davis, and Gaivironsky are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants, along with Defendant Condor, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Condor (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

23.     This action is properly maintainable as a class action for the following reasons:

a.     The Class is so numerous that joinder of all members is impracticable. As of August 1, 2019, there were 11,915,484 Condor common shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.     Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Proxy Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the

Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy Statement as currently composed.

        c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

        d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

        e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

        f.     A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

24.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.     Condor is a real estate investment trust that specializes in the ownership of premium-branded select-service, extended-stay, and limited-service hotels in the upper-midscale and upscale segments that are primarily located in the top 100 MSAs in the United States. The Company's new investment strategy hotels are franchised under premium brands such as Hilton, Marriott, and IHG and are operated by third-party management companies.

<u>**The Company Announces the Proposed Transaction**</u>

26.     On July 22, 2019, Condor Hospitality issued a press release announcing the

Proposed Transaction.  The press release stated in part:

> TORONTO & BETHESDA, Md.--(BUSINESS WIRE)-- NexPoint Hospitality Trust (TSXV: NHT.U) ("NHT") and Condor Hospitality Trust, Inc. (NYSE American: CDOR) ("Condor") today announced the execution of a definitive agreement (the "Merger Agreement"), under which NHT's operating partnership, NHT Operating Partnership, LLC ("NHT OP"), will acquire all of the outstanding equity interests of Condor and its operating partnership by merger. The total consideration payable pursuant to the transaction is approximately US$318 million, which will be satisfied by a combination of cash and debt, including the assumption of certain debt.

> **Transaction Highlights**

> - In line with NHT's growth strategy, NHT will acquire 15 select-service and extended stay hospitality properties, representing 1,908 guestrooms across eight U.S. states (the "Portfolio").

> - The transaction will expand NHT's geographic footprint into Georgia, Kansas, Kentucky, Maryland, Mississippi and South Carolina and increase its presence in Florida and Texas.

> - Following closing of the transaction, NHT's gross asset value is expected to increase to approximately US$700 million.

> - The merger consideration of US$11.10 per share to be paid to holders of shares of common stock represents a premium of approximately 34% over Condor's unaffected share price of US$8.27 as of July 19, 2019, the most recent trading day before the public announcement of the proposal to acquire Condor.

> A presentation further detailing the merits of the proposed transaction can be found under "News & Presentations" in the Investor Relations section of NHT's website (http://www.nexpointhospitality.com).

> "We're excited about NexPoint Hospitality Trust's strategic merger with Condor Hospitality Trust. The transaction instantly expands NHT's geographical footprint and balances NHTs strategic value-add portfolio with durable, core, extended-stay hotels." stated NHT's Chief Executive Officer, Jim Dondero. "We believe the future for quality extended-stay and select-service hotels remains bright."

> Bill Blackham, Condor's Chief Executive Officer, commented: "We are pleased with our strategic alternatives process concluding with a transaction we believe is attractive for our shareholders. NHT is acquiring our very high quality portfolio of outperforming select service hotels and Condor shareholders are receiving a

liquidity event at an attractive premium to our unaffected share price prior to the transaction announcement."

**Key Transaction Terms**

- Completion of the transaction, which is expected to occur in the fourth quarter of 2019, is subject to customary closing conditions, including the approval of Condor's common and preferred shareholders. There can be no assurances that any such conditions will be satisfied or waived or that the acquisition of the Portfolio will be completed.

- NHT OP has entered into voting agreements with certain shareholders of Condor that hold approximately 53% of the outstanding common shares and 100% of the preferred shares of Condor, pursuant to which, such holders have agreed to vote their shares of Condor in favor of the transaction.

- The transaction is not contingent on receipt of financing. NHT OP has entered into an equity commitment letter with NexPoint Advisors, L.P. ("NexPoint"), pursuant to which NexPoint has agreed to provide equity financing for the purchase price payable under the Merger Agreement (the "Equity Financing"). In addition to the Equity Financing, NHT will assume approximately US$8.65 million of in-place property level mortgage financing and expects to obtain secured financing to finance a portion of the purchase price and refinance certain debt of Condor.

- Upon closing of the transaction, holders of common stock of Condor would receive US$11.10, without interest thereon, per share, holders of 6.25% Series E Preferred Stock of Condor would receive US$10.00 per share and limited partners of Condor's operating partnership, Condor Hospitality Limited Partnership ("Condor OP"), would receive US$0.21346 per Condor OP partnership interest.

- The transaction is an arm's length transaction and no non-arm's length party of NHT holds any interest in Condor or its assets.

- NHT expects to maintain its current quarterly dividend of US$0.075 per unit or US$0.300 per unit on an annualized basis.

**Advisors**

KeyBanc Capital Markets, Inc. is acting as financial advisor to Condor. Winston & Strawn LLP and Goodmans LLP are acting as legal counsel to NHT and McGrath North Mullin & Kratz, PC LLO is acting as legal counsel to Condor. Neither TSX Venture Exchange nor its Regulation Services Provider (as that term is defined in policies of the TSX Venture Exchange) accepts responsibility for the adequacy or accuracy of this release.

27.    The Proposed Transaction is subject to approval by the shareholders of Condor, as well as regulatory approvals.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

28.     On August 23, 2019, the Company filed the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

29.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding Managements' Financial Projections

30.     The Proxy Statement contains financial projections prepared by Condor in connection with the Proposed Transaction, but fails to provide material information concerning such.

31.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs     evolving-views/;     Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto- profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

32.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

33.     Specifically, for each company, the Proxy Statement fails to disclose the material line items for the financial projections disclosed on page 42 of the Proxy Statement.  In addition, the Proxy Statement fails to disclose any information concerning unlevered free cash flow for the Company.

34.     Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding KeyBanc's Financial Opinion**

35.     The Proxy Statement contains the financial analyses and opinion of KeyBanc Capital Markets Inc. ("KeyBanc") concerning the Proposed Transaction, but fails to provide material information concerning such.

36.     With respect to KeyBanc's *Analysis of Selected Precedent Transactions*, the Proxy Statement fails to disclose: (i) the three transactions excluded by KeyBanc's Selected Transaction Comparables; (ii) the basis for subtracting 1.0x from the median EV/TTM EBITDA

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

multiple; and (iii) the basis for applying a multiple range of 12.4x to 14.4x to the Company's TTM EBITDA.

37.    With respect to KeyBanc's *Analysis of Comparable Public Companies*, the Proxy Statement notes that KeyBanc reviewed and compared "certain publicly available financial information" for comparable publicly traded companies, but fails to disclose the method by which KeyBanc chose such companies.

38.    With respect to *Premiums Paid Analysis*, the Proxy Statement notes that KeyBanc reviewed publicly available data for 20 transactions, but fails to disclose the parameters for selection of each of the target companies.

39.    Lastly, the Proxy Statement notes that KeyBanc National Association ("Key"), an affiliate of KeyBanc, is in discussions to provide acquisition financing to Parent in connection with the Proposed Transaction, but fails to disclose the specific amount of financing.

40.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

41.    Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Background of the Proposed Transaction**

42.    Finally, the Proxy Statement fails to disclose material information concerning the sales process leading up to the Proposed Transaction.

43.    First, the Proxy Statement notes that Robert W. Baird & Co. Incorporated ("Baird") contacted 27 parties as potential investors in the Company, 10 of which executed confidentiality agreements with the Company.  However, the Proxy Statement fails to disclose whether those agreements are still in place or contain any "don't ask, don't waive" and/or standstill provisions that would preclude the parties in question from making a superior bid for the Company.

44.    The Proxy Statement notes that KeyBanc identified over 200 potential bidders to gauge interest in a strategic transaction with the Company, and that between October 1, 2018 and October 25, 2018, the Company entered into 45 non-disclosure agreements with potential parties. However, the Proxy Statement fails to disclose whether those agreements are still in place or contain any "don't ask, don't waive" standstill provisions that would preclude the parties in question from making a superior bid for the Company.

45.    The Proxy Statement notes that prior to terminating the strategic alternative process, KeyBanc contacted Parties D and K to ascertain whether any of the bidders were willing to enhance and/or further negotiate their prior proposals.  Parties D and K declined to participate further, but the Proxy Statement fails to disclose the reasons for those declinations.

46.    In November 2018, the Proxy Statement notes that the Company received indications of interested from nine parties.  However, the Proxy Statement does not disclose any of the terms of those proposals, including, but not limited to, proposed merger consideration.

47.     The above referenced omissions are material to the Company's shareholders and should be disclosed to give shareholders the complete information needed to determine whether to vote for or against the Proposed Transaction.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

50.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

51.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information

regarding, among other things, the financial projections for the Company.

52.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

53.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

54.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

55.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they

were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

56.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

57.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

58.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.    The Individual Defendants acted as controlling persons of Condor within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Condor, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60.    Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

62.    In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

65.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.    Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.    Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 26, 2019                    Respectfully submitted,


                                          By: /s/ Joshua M. Lifshitz
                                          Joshua M. Lifshitz
                                          Email: jml@jlclasslaw.com
                                          **LIFSHITZ & MILLER LLP**
                                          821 Franklin Avenue, Suite 209

Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS**

I, Tammy Raul, hereby certify that:

1.  Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.
2.  I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.
3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.
4.  My transactions in CDOR securities that are the subject of this litigation during the Class Period are attached hereto as Exhibit A.
5.  I have  served as a representative party on behalf of a Class under this title during the last three years (Exhibit B).
6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Executed on 08/26/2019

Signature

## **Exhibit A**

My transactions in Condor Hospitality Trust, Inc. (CDOR) securities that are the subject of this litigation during the class period set forth in the complaint are as follows ("P" indicates a purchase, "S" indicates a sale):

| Security | Date | Sale | Purchase | Number of Shares | Price per Share |
|----------|------|------|----------|------------------|-----------------|
| CDOR | 1/27/2014 | | P | 23 | $13.30 |

**Exhibit B**

*Raul v. Amtrust Financial Services, Inc., et al.*, Case No. 1:18-cv-4440 (S.D.N.Y.)
*Raul v. Nevsun Resources Ltd., et al.*, Case No. 1:18-cv-10420 (S.D.N.Y.)
*Raul v. Dover Downs Gaming & Entertainment, Inc. et al.*, Case No. 1:18-cv-11506 (S.D.N.Y.)
*Raul v. Cavium, Inc. et al.*, Case No. 1:18-cv-139 (S.D.N.Y.)
*Raul v. SI Financial Group, Inc., et al.*, Case No. 1:19-cv-2028 (S.D.N.Y.)